**Margaret M. BROWER, Plaintiff,**

v.

**CONTINENTAL AIRLINES, INC., Defendant.**

**No. 96 CV 1911(ILG).**

United States District Court, E.D. New York.

July 29, 1999.

Robert H. Bernstein, Epstein Becker & Green, P.C., Newark, NJ, for Continental Airlines, Inc.

Raymond Nardo, Mineola, NY, for Margaret M. Brower.

## MEMORANDUM & ORDER

GLASSER, District Judge.

### SUMMARY

Plaintiff Margaret Brower ("Brower") commenced an employment discrimination action against defendant Continental Airlines, Inc. ("Continental") claiming that it illegally fired and failed to promote her because she was disabled and because of her age. She has brought a variety of claims against Continental under federal, state and local anti-discrimination statues. The defendant now moves for summary judgment.

### FACTS

I. *The Employment Conduct*

Continental hired Brower, a then 48 year-old woman, in February 1987 as a part-time reservations agent at LaGuardia Airport. Def. Rule 56.1 Statement ¶ 1. In March 1991, Continental's reservations office at LaGuardia closed resulting in the elimination of Brower's job and Continental offered her a position as a part-time Airport Sales Agent ("ASA"). *Id.* ¶ 2. As an ASA, Brower had substantial contact with customers and was often the first company representative that passengers met when they arrived at the airport. Accordingly, Continental expects its ASA's to be polite and helpful. *Id.* ¶ 3.

On July 10th, 1992, a passenger wrote a "Comment Card" to Continental which read, in part:

> With one party (2 people) in front of us, the agent at the first class counter [plaintiff] announced that "I am finished—get back," grabbed her coffee and left the counter with all of us in line .... The agent was incredibly rude to the couple in front of us and totally uncaring to the line of First Class passengers.

*Id.* ¶ 8; Bernstein Aff., Ex. H. That same day, another passenger also wrote Continental and complained as follows:

> Tried to check in at FC [First Class] counter. Stepped up to counter & [plaintiff] said I'm finished step back & left. We waited in line for 18 min until [someone] came to help us. We were very upset which is no way to begin a vacation.

*Id.* On July 29th, 1992, Brower's supervisor, Alba Liston ("Liston") notified the plaintiff that she was "very disappointed to receive the enclosed Comment Cards from two of our customers on July 10, 1992." *Id.* ¶ 11.

On March 31st, 1993, Brower received her performance appraisal. While it was positive in several respects, it did caution that she needed "to exercise tolerance especially when dealing with adverse situations." *Id.*

On April 4th, 1993, Brower was again the subject of a written complaint filed by an unhappy passenger. The customer wrote, in part:

> I missed my America West flight and asked [plaintiff] at the [LaGuardia] ticket counter to purchase a ticket on # 419. She rudely asked "Doesn't America West have a flight you can take?" Then when I handed her the $125 [in] cash to

pay for my ticket, she rudely made a scene at the counter . . . .

*Id.* ¶ 13; Bernstein Aff., Ex. K. William Richardson ("Richardson"), the LaGuardia Station manager, called the passenger after receiving a copy of this complaint. He summarized his conversation with her as follows:

Usually, when I would call people, it was relatively easy because time had elapsed and they're not upset anymore . . . . This woman was—she felt that she was totally humiliated. She began crying on the phone when I talked to her . . . . there was an argument about whether . . . [the plaintiff] would handle her or not. That was minor. What she described to me is that the way [the plaintiff] took her hundred dollar bill and held it up with other customers around, held it up as if it was dirty, as if something had been spilled on it or something and totally humiliated her.

*Id.* ¶ 14; Richardson Tr. 37:21—38:12. Richardson further testified at his deposition about this incident as follows:

Answer: . . . . When a grown woman is left crying over a business transaction, the professional then, in this case being [the plaintiff], that conduct is inexcusable.

Question: It was your impression that the grown woman was left crying over this transaction because of [the plaintiff's] handling of it?

Answer: Humiliation.

Question: And it's your impression that [the plaintiff] caused this humiliation?

Answer: Yes, intentionally.

*Id.* ¶ 15; Richardson Tr. 56:21—57:7.

Later that same month, on April 30th 1993, Brower's behavior was the subject of yet another passenger Comment Card:

[Plaintiff] at the check in ticket counter was rude and was asking for [$]45.00 for an extra bag I had to check in. I was travelling [sic] 1st class and it was not an upgrade. I paid full fair. . . . If she had been pleasant about the 4th piece, I would have complied graciously but she was obviously having a bad day. It doesn't matter if you are a surgeon or an airline attendant—*you can't bring your bad mood to work!* . . . . Then, as I was walking away, she mumbled under her breath "I don't need this aggravation." I find it convenient to fly Continental, but you are not the only airline. I spoke with some attendants in Houston about this incident and they said that "the ones from N.Y. are like M. Brower—Rude and unlikable." You may call me.

*Id.* ¶ 16; Bernstein Aff. Ex. L.

On May 13th, 1993, rather then terminate Brower's employment, her supervisor again counseled her as a result of receiving yet another Comment Card from a disgruntled passenger. *Id.* ¶ 17. Brower was also counseled by management on May 27th, 1993, and was warned about the "perception [given when] walking away from customers." *Id.* ¶ 20.

On June 3rd, 1993, Brower's supervisors again had a counseling session with her. At this session, they tried to help Brower focus on customer service skills by addressing her behavior in connection with the passenger who cried as a result of her interaction with Brower. Management intended this session to help Brower understand why the passenger was upset with Brower's treatment of her, and to avoid the recurrence of similar problems. *Id.* ¶ 21. However, Brower's supervisors were dissatisfied with her participation in that counseling session. They felt that she failed to focus on the issues of her demeanor and interaction with the customer, and instead insisted that she had done nothing wrong. *Id.* ¶ 22. They further felt that she refused to even consider why the passenger would be upset with her. *Id.* ¶ 23.

That same day, another passenger complained that the plaintiff insulted him when

he tried to purchase tickets for his sons. Continental then spoke to Brower and recorded the substance of that conversation in her personnel file:

> Bill Richardson [the station manager] & myself (Nikki) spoke with [Brower] today after her poor and unacceptable behavior in handling a customer, which resulted in [the] customer feeling that he was being called a "liar"
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Bill Richardson informed [Brower] that her behavior was unacceptable and will no longer be tolerated. He offered assistance in getting her help if she wanted it.

*Id.* ¶ 24.

On July 26th, 1993, Continental counseled Brower for the eighth time in connection with her behavior. One of her supervisors, Liston, explained as follows:

> [The plaintiff] was called at my office to discuss her "break period." In an arrogant and negative way, she explained to me that she had closed up with [morning supervisor] Cecilia [Harney and] that it was best for the operation if she took her break at 6:30 a.m. I will verify and pass this information to opening [supervisor]. At 11:30 a.m. [plaintiff] apologized for her early presentation.

*Id.* ¶ 25. Brower later admitted that she had overreacted in this conversation with Liston. *Id.* ¶ 26.

On August 10th, 1993, Cecilia Harney, one of Brower's supervisors, sent her a "termination warning letter," which read as follows:

> There was inappropriate behavior which was displayed at the Ticket Counter, as a result of the above situation which is of great concern to me. Item # 3 in the General Rules of Conduct clearly states "all duties are to be performed in a courteous, helpful and businesslike manner both with regard to work assignment and one's relationship with other employees and customers." (See attached)

> Based on my observations and after reviewing eight statements, which includes yours, I feel that your behavior was in complete violation of Continental Airlines Policy and Procedures.

> On July 7, 1992, you received a letter for unsatisfactory job performance and on July 29, 1992, you also received a letter for unsatisfactory job performance. Both letters relate to your inability to interact with the internal and external customer. The situation of July 31, 1993, ties into your inappropriate behavior.

> Continued employment with Continental Airlines will be based on the effective resolution of your unacceptable behavior
>
> . . . .

*Id.* ¶ 30.

Pursuant to Continental's policies, Brower filed a request for a step one appeal of the termination warning to be decided by a hearing manager outside of plaintiff's chain of command. *Id.* ¶ 32. Management granted this request and conducted a hearing on September 3rd, 1993 before Brad Hendrick, the hearing manager named to hear the appeal. *Id.* ¶ 33. Although Brower contends that she was not permitted to adequately defend herself, *see* Pl. Resp. to Def. Rule 56.1 Statement ¶ 35, she does not dispute that she was permitted to make opening statements and present evidence in support of her position. *Id.* ¶ 36. Following the hearing, Hendrick held the warning was justified. He observed that:

> I am very concerned that although verbal and written counseling has been administered that the root of the problem has not been addressed nor recognized by [the plaintiff]. Therefore I am highly recommending that [she] seek assistance from the Employee Assistance Program ... to discuss this sense that "management at [LaGuardia] is out to get her," before a repeat of this nature results in termination of services. I cannot stress enough that there is clearly a problem,

and failure to address it will lead to more incidents. The standard steps of discipline are not affecting the behavior in the manner desired.

Def. Rule 56.1 Statement ¶ 38. Brower never sought assistance from Continental. *Id.* ¶ 39. Brower did, however, request a Step Two Appeal Hearing, which was granted. Step Two Hearings are held before a panel of four Continental employees: two appointed by the airline and two representatives selected from an employee council. The employee council is comprised of non-management employees who assist their co-workers with a variety of employment-related issues.

On November 11th, 1993, the Step Two Hearing was conducted before a four member board of management and staff members from other airports. *Id.* ¶ 43. The plaintiff's attorney was present and, although she contends that he was not permitted to participate in this hearing, she was afforded an opportunity to present her case and never claimed that she was subject to any illegal discrimination. *Id.* ¶ 44. On November 15th, 1993, the four panel Board unanimously upheld Brower's termination warning. *Id.* ¶ 46.

One week after the Board affirmed the termination warning, on November 21st, 1993, yet another passenger complained, in writing, that Brower was unhelpful. The complaint read:

> Baggage service agent attendant [plaintiff] was very rude, uncooperative to my request for lost baggage and the procedure for reclaiming luggage. She also denied that there was a supervisor of the department and would not give me her name or telephone # . She refused to take a claim. She insisted I just call to check on my baggage.

*Id.* ¶ 48. On November 25th, 1993, Liston gave Brower an opportunity to respond to this customer complaint. *Id.* ¶ 50. Based on the curt responses to her supervisor's

questions, management did not believe that Brower took the issue seriously and, finally, on December 3rd, 1993, Continental fired Brower. *Id.* ¶¶ 50, 52.

## II. *Brower's Alleged Disability*

Brower has had foot bunions since birth. *Id.* ¶ 54. She has never taken any medication for this condition, but did have surgery for her bunions in the early 1980's. *Id.* ¶¶ 55–56. The plaintiff is able to do some walking—the exact amount is disputed by the parties. However, what is not disputed is that in 1997 (a year after she commenced this action alleging that she is disabled) she participated in a slow three hour march from the United Nations building (on the far East Side of Manhattan) to the Intrepid Museum (on the far West Side of Manhattan) covering a distance of approximately one to two miles. *Id.* ¶ 61.

In or about April 1993, Brower told her doctor that she had experienced pain in her feet. The doctor wrote a note suggesting that Brower be allowed "to work sitting on a stool to take pressure off her feet." *Id.* ¶ 63. Following Continental's receipt of Brower's doctor's note, a stool was provided for her, which she used.[1] The decision to terminate Brower was made four months after Continental provided the stool.

On April 19th, 1996, Brower filed this Complaint in which she alleges that Continental fired her because of her disability, her age and in retaliation for her request for a stool. More specifically, the Complaint contains the following fourteen counts: (1) Continental fired her because of her handicap in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.;* (2) Continental failed to promote her in violation of the ADA; (3) Continental failed to promote her due to her age in violation of the Age

---

1. Both parties agree that although there were some logistical difficulties procuring the stool, by July 1993, Continental had provided Brow-er with a stool to use when she worked. *See* Def. Rule 56.1 Statement ¶¶ 64–70.

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.;* (4) Continental fired her due to her age in violation of the ADEA; (5) Continental terminated her because of her disability in violation of the New York State Human Rights Law ("NYSHRL"); (6) Continental failed to promote her because of her disability in violation of the NYSHRL; (7) Continental fired her because of her age in violation of the NYSHRL; (8) Continental failed to promote her because of her age in violation of the NYSHRL; (9) Continental fired her because of her disability in violation of the New York City Human Rights Law ("NYCHRL"); (10) Continental failed to promote her because of her disability in violation of the NYCHRL; (11) Continental fired her because of her age in violation of the NYCHRL; (12) Continental failed to promote her because of her age in violation of the NYCHRL; (13) Continental fired her in retaliation for requesting a stool under the ADA; and (14) Continental fired her in retaliation for requesting a stool under the NYCHRL. Continental now moves for summary judgment on all of the plaintiff's claims.

## DISCUSSION

### I.  *Summary Judgment Standard*

Summary judgment under Rule 56 is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of proof on such motion. *See United States v. All Funds,* 832 F.Supp. 542, 550–51 (E.D.N.Y.1993).

If the movant satisfies its initial burden of production, the burden of proof shifts to the nonmovant who must demonstrate that a genuine issue of fact exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in its favor. *Id.* The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Once the nonmovant has adduced evidence of a genuine issue of material fact, its "allegations [will be] taken as true, and [it] will receive the benefit of the doubt when [its] assertions conflict with those of the movant." *Samuels v. Mockry,* 77 F.3d 34, 36 (2d Cir.1996).

In employment discrimination cases, courts are particularly cautious about granting summary judgment where intent is at issue. *See Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997). However, even in those cases a "plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Id.*

### II.  *The Disability Claims (Counts I, II, V, VI, IX and X)*

In a series of decisions, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court set forth the allocation of burdens and orders of presentation in a Title VII case. That burden-shifting analysis has been applied to claims of discrimination under the ADA, the ADEA, the NYSHRL and the NYCHRL. *See, e.g., Greenway v. Buffalo*

*Hilton Hotel,* 143 F.3d 47, 52 (2d Cir.1998) (applying *McDonnell Douglas* analysis to ADA case); *Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1048 (2d Cir.1992) (discrimination claims brought under the NYSHRL and NYCHRL are analogous to claims brought under the ADA, and the same elements and burdens of proof and production apply); *Wallengren v. Samuel French, Inc.,* 39 F.Supp.2d 343, 346–47 (S.D.N.Y.1999); *Fairbairn v. Board of Educ.,* 876 F.Supp. 432, 437 (E.D.N.Y. 1995). First, "the plaintiff has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination." *Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089. Second, "if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [adverse employment decision]." *Id.* at 253, 101 S.Ct. 1089. Third, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*

■ In order to establish a *prima facie* case of discrimination under the ADA[2], Brower must prove: (1) Continental is subject to the ADA; (2) that she is disabled within the meaning of the ADA; (3) that she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; and (4) that she suffered an adverse employment action because of her disability. *Wernick v. Federal Reserve Bank,* 91 F.3d 379, 383 (2d Cir.1996); *Zuppardo v. Suffolk County Vanderbuilt Museum,* 19 F.Supp.2d 52, 54 (E.D.N.Y.1998). Continental argues that Brower is unable to prove her *prima facie* case because she cannot show that she has a disability under the ADA or that she suffered an adverse

employment action because of her disability.

**A. The Disability**

The ADA provides as follows:

The term "disability" means, with respect to an individual—

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). The ADA does not define "major life activities" or "substantial limit[ation]." However, the regulations promulgated by the EEOC under the ADA and the relevant Second Circuit case law explain these terms. In determining whether a plaintiff's condition substantially limits a major life activity, the ADA's regulations set forth three factors that should be considered:

> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

The Second Circuit, in *Ryan v. Grae & Rybicki,* 135 F.3d 867, 870 (2d Cir.1998), explained that:

> Although almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled. Thus, in assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments

---

**2.** Because wrongful termination claims based on disability brought under the NYSHRL and the NYCHRL require proof of the same elements as the ADA, *Mohamed v. Marriott Intern., Inc.,* 905 F.Supp. 141, 156–57 (S.D.N.Y. 1995), for convenience, the Court will review defendant's motion only under the ADA. *See Meling v. St. Francis College,* 1997 WL 1068681, at \*3 n. 3 (E.D.N.Y.1997).

which merely *affect* major life activities from those that *substantially limit* those activities. *See, e.g., Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir.1995) ("not every impairment that affect[s] an individual's major life activities is a substantially limiting impairment").

Brower argues that her ability to stand and walk are substantially limited by her degenerative foot condition. In support of this claim, she submitted an expert's report that stated that "the current state of her feet will not allow any extended walking or standing." Nardo Aff. at Ex. 24. Brower's claim of disability, and her expert's report, however, are sharply contradicted by her participation in a three-hour march of approximately one and one-half to two miles that took place a year after she commenced this action. However, even ignoring the overwhelming doubt that her participation in the march casts on her claimed disability, there is ample authority for the proposition that Brower's difficulty walking does not render her "disabled" for the purposes of the ADA.

In *Zuppardo v. Suffolk County Vanderbuilt Museum*, 19 F.Supp.2d 52 (E.D.N.Y. 1998), the plaintiff alleged that he was unable to walk more than 1/8th of a mile without suffering severe pain and needing to rest. Accordingly, the plaintiff asserted that he was substantially limited in a major life activity, namely walking. *Id.* at 55. Of his purported disability, the Court found that "while [the plaintiff's] ability to walk may well be 'affected,' it was not 'substantially impaired,' and he failed to prove he was 'disabled' as a matter of law." *Id.* at 56; *see also Kelly v. Drexel Univ.*, 94 F.3d 102, 106–08 (3d Cir.1996) (holding that plaintiff who did not require crutches or cane not "disabled" as a matter of law); *Banks v. Hit or Miss, Inc.*, 996 F.Supp. 802, 807 (N.D.Ill.1998) (finding plaintiff not "disabled" as a matter of law where she could only walk short distances and could not stand for extended periods of time);

*Barker v. Andrew Corp.*, 1997 WL 803866, at *1–4 (N.D.Ill.1997) (finding plaintiff's walking ability impaired but not so limited that he could be considered "disabled"); *Ingles v. Neiman Marcus Group*, 974 F.Supp. 996, 1003 (S.D.Tex.1997) (plaintiff with "limited walking abilities" and special footwear not disabled as matter of law); *Horth v. General Dynamics Land Sys., Inc.*, 960 F.Supp. 873, 878 (M.D.Pa.1997) (plaintiff who could not sit or stand for more than two hours without difficulty and had trouble walking could not show limitations were more than moderate restrictions and thus, was not disabled). The undisputed facts in this case drive this Court to conclude that Brower was not disabled for the purposes of the ADA.

B. *"Regarded as" Having a Disability*

The second way by which a plaintiff may satisfy the ADA's disability requirement is if she can show that the defendant "regarded" her as being disabled. *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 646 (2d Cir.1998). Brower alleges that Continental regarded her as being disabled. Pl. Mem. at 28. The Second Circuit makes clear that "whether an individual is regarded as having a disability turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability." *Colwell*, 158 F.3d at 646 (internal quotations omitted) (citing *Francis v. City of Meriden*, 129 F.3d 281, 284 (2d Cir.1997)). However, it "is not enough ... that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled *within the meaning of the ADA." Id.* (emphasis in the original). Thus, in order for Brower to prevail under this theory, she is required to adduce evidence that Continental regarded her as having an impairment that substantially limited a major life activity. This she failed to do.

Brower argues that due to her request for a stool, her "foot problem" be-

came common knowledge at the airport. Pl. Mem. at 29. Specifically, the plaintiff relies on the deposition testimony of Cecilia Harney, who stated that she believed the plaintiff had a foot problem because "she wore big white sneakers" instead of footwear more appropriate for the Continental uniform. *See* Harney Tr. at 30. This evidence alone—and this is the only evidence Brower has submitted in support of her claim that Continental regarded her as disabled—could not compel a rational jury to find that Continental regarded Brower as being substantially limited in any major life activity. Therefore, the Court dismisses Brower's claim that Continental regarded her as disabled within the meaning of the ADA.

### C. *"Record of" Having a Disability*

The ADA's definition of "disability" can be also be satisfied where the plaintiff can demonstrate that she had "a record" of an impairment that substantially limits one or more major life activities. *See* 42 U.S.C. § 12102(2)(B); *Colwell*, 158 F.3d at 645. In this case, Brower argues that she had a "record of an impairment" because she submitted medical documentation indicating the nature of her physical disability. However, as discussed above, the medical documentation that Brower introduced does not support a finding that Brower was disabled for the purposes of the ADA.

Also rejected is the theory that Brower's request for and Continental's granting of the accommodation establishes a "record of her disability." On this point *Colwell* is clear:

> An employer that accedes to minor and potentially debatable accommodations (a sensible way to avoid litigation, liability and confrontation), does not thereby stipulate to the employee's record of a chronic and endless disability.

158 F.3d at 646.

Because Brower is not disabled for the purposes of the ADA, this Court need not inquire any further into Brower's claim of disability discrimination. And because be-

ing disabled under the ADA is also part of Brower's *prima facie* case under her various "failure to promote" based on disability claims, those claims are dismissed as well. *See, e.g., Giruzzi v. Blue Cross/Blue Shield of Utica–Watertown, Inc.*, 1998 WL 690981, at *5 (N.D.N.Y.1998) (To establish a *prima facie* case of a discriminatory failure to promote under the ADA, plaintiff must show: (1) that she was disabled under the ADA; (2) that she applied for positions for which she was qualified; (3) that she was not promoted; and (4) the failure to promote was under circumstances giving rise to an inference of discrimination.). However, her claims under the ADEA require this Court to analyze Brower's qualifications, which as demonstrated below are fatal to both her claims under the ADEA and the ADA.

### D. *Brower's Qualifications (Counts III, IV, VII, VIII, XI and XII)*

■ Under the ADA and the ADEA, as part of the plaintiff's *prima facie* case, she must show that she was "qualified" for her position. *Wernick*, 91 F.3d at 383; *Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir.1994). "Qualification" for a position means meeting the reasonable expectations of the employer. *Thornley v. Penton Publishing, Inc.*, 104 F.3d 26, 29 (2d Cir. 1997). In the discriminatory discharge context, the Second Circuit analyzes "this element in terms of whether plaintiff shows 'satisfactory job performance' at the time of the discharge." *Id.* "Whether job performance was satisfactory depends on the employer's criteria for the performance of the job—not the standards that may seem reasonable to the jury or judge." *Id.*

■ Brower's job as an Airport Sales Associate required her to greet customers at the airport and to assist them with their travel-related issues. She was expected to be polite and helpful. The record quite clearly shows that she was not consistently polite or helpful, as demonstrated by the

fact that her behavior was the subject of at least five written customer complaints.

Brower has a number of responses to the customers' complaints. First, she alleges that despite the hurt feelings of some of the passengers, she was always in technical compliance with Continental's policies. This response is unavailing because Continental has never claimed that it fired her for failure to comply with its policies. Technical compliance aside, it is undisputed that numerous passengers were unhappy with the service they received from Brower.

Second, Brower states that many of the problems the passengers complained about were beyond her control, for example missing luggage and delayed flights. Again, Brower misses the point. Her job, in part, was to allay the concerns of Continental's customers, not to reduce them to tears.

Finally, Brower argues that she had numerous positive evaluations and that many of her co-workers attested to her attentiveness to her job and to Continental's customers. This may, in fact, be the case. However, an employer need not suffer an employee's occasional malfeasance just because she is diligent the majority of the time. As for Brower's positive evaluations, the Court simply notes that a prior positive performance review will not establish that a later unsatisfactory evaluation was a pretext for unlawful discrimination. *See Moorer v. Grumman Aerospace Corp.,* 964 F.Supp. 665, 674 (E.D.N.Y.1997).

Courts have held, and common sense dictates, that an employee with poor interpersonal skills and behavior problems may not be qualified for a job that requires constant contact with an employer's customers. *See, e.g., Beyousi v. Blooming-*

*dale's Inc.,* 1998 WL 689939 (S.D.N.Y. 1998) (finding that plaintiff was not performing job satisfactorily where defendant documented five incidents of plaintiff's rude and/or offensive behavior towards colleagues or customers); *Zenni v. Hard Rock Cafe Intern., Inc.,* 903 F.Supp. 644 (S.D.N.Y.1995) (finding that plaintiff did not meet employer's legitimate expectations in part due to his substandard performance in the areas of customer relations and attitude); *Saucier v. Edgewater Construction Co.,* 1994 WL 36363 (N.D.N.Y.1994) (finding that plaintiff who was rude to vendors and co-workers and possessed a bad attitude was not performing her job satisfactorily). In this case, it is undisputed that numerous customers complained in writing about Brower's interpersonal skills. As such, this Court is driven to conclude that, as a matter of law, Brower was unqualified for the position from which she was terminated. Accordingly, the plaintiff cannot make out a *prima facie* case of discrimination under any of her termination based on disability or age claims and those claims are dismissed.[3]

### III. *Nondiscriminatory Basis for Discharge*

■ Even if Brower could state a *prima facie* case of discrimination under the relevant statutes, dismissal of the claim would be warranted under the second and third prongs of the *McDonnell Douglas* analysis. Continental has advanced a credible reason for its dissatisfaction with and eventual discharge of Brower. Specifically, it points to the numerous customer complaints regarding Brower. Having articulated this nondiscriminatory reason, the burden now shifts to Brower to come forth with evidence that the articulated reason was really a pretext for discrimination.

---

**3.** The "failure to promote" claims arise out of Continental's alleged failure to promote her to the position of Customer Service Representative ("CSR"). This position, as its name suggests, also requires constant customer contact. *See* Pl. Tr. at 363. As such, for the same reasons Brower was unqualified for the position from which she was fired, she was also unqualified for the CSR position. Therefore, Brower cannot state a claim for "failure to promote" under any of the statutes she claims relief under and those claims are dismissed as well.

*Hicks,* 509 U.S. at 509, 113 S.Ct. 2742. The plaintiff has failed to provide any evidence that this reason was pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine* 450 U.S. at 256, 101 S.Ct. 1089.

While there may be factual disputes as to whether the customer complaints directed against Brower were justified and whether Continental promptly provided her a stool to sit on, there is no evidence—credible or otherwise—proffered by the plaintiff that would allow a finder of fact to conclude that Continental fired her because of her disability. Brower has not alleged that Hendrick or any members of the appeal board were even aware of her foot condition. Def. Rule 56.1 Statement ¶ 45. Brower's unsupported statements that Continental did discriminate against her are not enough to defeat Continental's stated explanation for the termination. *See, e.g., Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993) (When construing facts in the summary judgment context, a plaintiff must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."); *Moorer,* 964 F.Supp. at 674–75 (conclusory allegations not sufficient to create genuine issue of material fact). To defeat a motion for summary judgment, a plaintiff must do more than simply assert that the defendant's stated reason for firing her was false; she must also demonstrate that the termination was motivated by a discriminatory animus. *See Norton v. Sam's Club,* 145 F.3d 114, 120 (2d Cir.1998). And this Brower has not done.

**IV.** *Retaliation (Counts XIII and XIV)*

■ The ADA recognizes a cause of action for retaliation. Under the statute, "[n]o person shall discriminate against any individual because such individual has op-

posed any act or practice made unlawful by this [Act] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the [Act]." 42 U.S.C. § 12203(a). To establish a *prima facie* case of retaliation, a plaintiff must prove that (1) she was engaged in an activity protected by the ADA, (2) an adverse employment action occurred, and (3) there exists a causal link between the protected activity and the adverse employment decision. *Charlotten v. May Dept. Stores Co.,* 1998 WL 635547, *4 (S.D.N.Y. 1998). In this case, Brower cannot show a causal link between the protected activity and her termination.

Initially, the Court notes that although the "protected activity" element of a retaliation claim is usually satisfied by the filing of a formal complaint with an agency or the filing of a lawsuit, in *Grant v. Hazelett Strip–Casting Corp.,* 880 F.2d 1564, 1569 (2d Cir.1989), the Second Circuit found that "Congress sought to protect a wide range of activity in addition to the filing of a formal complaint." *See also Kotcher v. Rosa and Sullivan Appliance Center, Inc.,* 957 F.2d 59, 64 (2d Cir.1992). In this case, the protected activity that Brower complains of was her request for a stool, in order that she could sit down while she worked.

■ Turning to the "causal connection" element, this Circuit has held that there are two methods of establishing a causal connection: (1) indirectly by "showing that the protected activity was followed by discriminatory treatment ... or [2] directly through evidence of retaliatory animus." *Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990). Here, Brower cannot establish a temporal connection between her request for a stool and the decision to terminate her four months later. *See Hollander v. American Cyanamid Co.,* 895 F.2d 80, 85–86 (2d Cir.1990) (finding no causal connection where the time intervening between the alleged discrimination and

the protected activity was only three months).

Brower is also unable to demonstrate any evidence of retaliatory animus. She conceded that no one suggested or hinted that her termination was related to her request for a stool. Pl. Tr. 278. Further, Brower admits that she was permitted to use a stool once the request had been made. *Id.* at 275. Finally, the plaintiff testified that every other employee who requested a stool was permitted to use them, when necessary. *Id.* at 277.

As for the suggestion that the customer complaints were exaggerated in order to create a pretextual reason for Brower's termination, the record makes clear that those complaints, as well as management's efforts to counsel Brower, occurred both before and after she requested the stool. Because Brower cannot establish a *prima facie* case of retaliation, that claim is dismissed.

### V. *Local Claims*

Continental also argues that it is entitled to summary judgment on the NYCHRL claims because Brower failed to comply with a statutory prerequisite to filing the NYCHRL cause of action. Section 8–502(c) of the New York City Administrative Code requires that "[p]rior to commencing a civil action [under the New York City Human Rights Law] ... the plaintiff shall serve a copy of the complaint upon the city commission on human rights and the corporation counsel." Plaintiff concedes that she failed to serve her Complaint in the manner required by § 8–502(c). However, contrary to Continental's assertions, numerous Federal courts, as well as the New York Appellate Division, have concluded that the requirements of § 8–502(c) are not a condition precedent to suit. *Harrison v. Indosuez*, 6 F.Supp.2d 224, 234–35 (S.D.N.Y.1998); *see*

also *McNulty v. New York City Dep't of Finance*, 941 F.Supp. 452, 461–62 (S.D.N.Y.1996) (majority of courts favor permissive reading of § 8–502(c)); *Bernstein v. 1995 Associates*, 217 A.D.2d 512, 516, 630 N.Y.S.2d 68, 72 (1st Dep't 1995).

In any event, Brower's claims under the New York City laws are dismissed on the merits because, for the reasons explained above, Brower cannot establish a *prima facie* case under this section.

### VI. *Attorney's Fees*

The defendant has moved for its costs, disbursements and attorney's fees. The Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b) [4], authorizes district courts to award reasonable attorney's fees and costs to the prevailing party in civil rights litigation. The Supreme Court has discouraged the application of this section where the prevailing party is the defendant. In *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam), the Court reiterated its position, first set forth in *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), that, "[t]he fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees" in favor of the defendant. Rather, in order to award the defendant attorney's fees and costs, this Court would be required to make a finding that the plaintiff's claims were "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg*, 434 U.S. at 422, 98 S.Ct. 694; *American Fed'n of State County and Mun. Employees v. County of Nassau*, 96 F.3d 644, 646 (2d Cir.1996).

Because the parties did not brief the issue of attorney's fees, this Court pro-

---

**4.** 42 U.S.C. § 1988(b) provides, in relevant part:

In any action or proceeding to enforce a provision of ... this title ... the court, in its

discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ....

vides them the opportunity to do so. The defendant may submit a supplementary brief on the issue of attorney's fees by August 13th, 1999. The plaintiff may respond by August 27th, 1999. The defendant may submit a reply by September 3rd, 1999. Oral argument on this issue will be held on September 10th, 1999 at 10:00 a.m.

## CONCLUSION

For the foregoing reasons, summary judgment is awarded to the defendant. The Court retains jurisdiction for the purposes of determining whether attorney's fees should be granted.

**SO ORDERED.**