Douglas W. **MANZ**, Plaintiff,

v.

Robert J. **GAFFNEY**, in his professional capacity, County of Suffolk, John B. Wingate, Commissioner, Suffolk County Department of Social Services, in his individual and professional capacity, Defendants.

No. CV 99–8442.

United States District Court, E.D. New York.

May 6, 2002.

Raymond Nardo, Esq., Mineola, for Plaintiff.

Robert J. Cimino, Esq., Suffolk County Attorney, By Diane Leonardo Beckman, Esq., Hauppauge, for Defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an employment discrimination case in which Plaintiff Douglas Manz ("Plaintiff" or "Manz") claims discrimination based upon a disability in violation of: (1) the Americans With Disabilities Act, 42

U.S.C. § 12102 (the "ADA"); (2) the Rehabilitation Act of 1973, 29 U.S.C. § 701 (the "Rehabilitation Act"); and (3) the New York State Human Rights Law. Plaintiff has been employed in the Suffolk County Department of Social Services since 1995. He alleges that he was denied a promotion to which he was entitled on account of his disability. Plaintiff's claims of discrimination are based upon an actual disability, a record of disability and a perception of disability. Additionally, Plaintiff claims retaliatory discrimination. Named as defendants are the County of Suffolk, the Suffolk County Executive and the Commissioner of the Suffolk County Department of Social Services (collectively the "County").

Presently before the court is the County's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted and the case is dismissed.

## BACKGROUND

### I. Factual Background

The facts upon which the court relies are those set forth in Plaintiff's complaint as well as in the various depositions and uncontroverted documents submitted to the court in support of and in opposition to the motion.

Plaintiff was hired by the County in 1995 pursuant to Section 55–a of the New York State Civil Service Law ("Section 55–a"). That section, entitled "Employment of persons with disabilities by municipalities," authorized entities, like Suffolk County, to set aside a number of positions with duties that can be performed by qualified physically or mentally disabled persons. Individuals hired under Section 55–a must be certified either by the New York State Department of Social Services Commission for the Blind and Visually Handicapped as blind, or by the State Education Department as otherwise physically or mentally disabled. Section 55–a allows counties to extend the same opportunities for promotion to employees hired pursuant to that section as afforded other employees. Plaintiff was hired for the position of "Examiner I" after being certified by the New York State Commission for the Blind.

In 1997, Plaintiff was tested for a promotion to the position of "caseworker trainee." The complaint alleges that Manz scored a 95 out of a possible 100 points on the promotion examination. Manz's complaint states that he interviewed for the caseworker trainee position on several occasions between November of 1997 and March of 1999. Although Plaintiff was never offered the promotion, he asserts that during the time period that he interviewed for the job, the County hired fifty caseworker trainees. Plaintiff asserts that the failure to promote him was based upon his disability.

Plaintiff filed a Notice of Claim against the County in May of 1998. In June of 1998, Plaintiff asked his supervisor for leave time so that he could attend a meeting with a county attorney to discuss his claim of disability discrimination. Plaintiff alleges that after the June 1998 meeting, he received a poor performance evaluation. According to Plaintiff, this evaluation, as well as the refusals to promote Plaintiff that followed the filing of the Notice of Claim and the June 1998 meeting, were acts taken in retaliation for the making of a claim of disability discrimination.

### II. Plaintiff's Complaint

Plaintiff's claim of disability is based upon a visual condition known as "ocular albinism." As a result of this condition, Plaintiff's corrected vision is no better that 20/60. The complaint alleges that Plain-

tiff's vision constitutes an impairment that limits the major life activities of "seeing, reading, and driving." Plaintiff further alleges discrimination based upon his record of having a disability and the County's perception of him as a disabled individual. These latter two claims are premised, in large part, on the fact that Plaintiff was hired as a visually handicapped person pursuant to Section 55–a. Finally, Plaintiff sets forth a retaliation claim, alleging that he was denied a promotion because he engaged in activities protected by anti-discrimination laws. Plaintiff seeks various forms of damages as well as appointment to the caseworker trainee position.

### III. The Motion to Dismiss

Prior to seeking summary judgment, Defendants sought dismissal of all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the context of that motion, the County argued that Plaintiff was not disabled within the meaning of the ADA. In support of this position it was argued: (1) that Plaintiff did not suffer from a physical impairment and (2) that Plaintiff suffered no substantial limitation in the performance of any major life activity. In this regard it was argued that driving has been rejected as constituting a "major life activity" within the meaning of the ADA.

The County sought dismissal of the "record of a disability" claim on the ground that the hiring of Plaintiff pursuant to Section 55–a did not constitute a "record of a disability" within the meaning of the ADA. In a similar vein, the County argued that the claim of perceived disability must fail because Manz was never perceived as having a disability within the meaning of the ADA. Finally, dismissal of Plaintiff's claim for retaliation was sought on the ground that Plaintiff failed to allege facts sufficient to show a causal connection between any protected activities and adverse employment action.

This court granted the motion to dismiss only to the extent of precluding Plaintiff from relying on driving as a major life activity within the meaning of the ADA. The remainder of the motion was denied as premature in light of the lack of discovery.

### IV. The Current Motion

Having completed discovery and armed with deposition testimony and documentary evidence, the County again seeks dismissal of the complaint—this time in the form of a motion for summary judgment.

## DISCUSSION

### I. Legal Principles

#### A. Standards For Summary Judgement

A motion for summary judgement is properly granted only if the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FRCP 56(c); Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking judgment bears the burden of demonstrating that no issue of fact exists. McLee v. Chrysler Corp. 109 F.3d 130, 134 (2d Cir.1997). However, when the nonmoving party fails to make a showing on an essential elements of its case with respect to which it bears the burden of proof, summary judgment will be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party resisting summary judgment must not only show a disputed issue of fact, but it must also be a material fact in light of substantive law. Only disputed facts that "might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment." *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505.

### B. *Burden Shifting Analysis*

Claims of employment discrimination brought pursuant to the ADA are subject to the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see Heyman v. Queens Village Committee for Mental Health,* 198 F.3d 68, 72 (2d Cir.1999); *Rivera v. Apple Industrial Corp.,* 148 F.Supp.2d 202, 211 (E.D.N.Y.2001).

Under the *McDonnell Douglas* analysis, the plaintiff bears the burden of showing a *prima facie* case of discrimination. The burden of production then shifts to defendant to offer a non-discriminatory reason for the employment action. Thereafter, it is for the plaintiff to show that the reason offered by defendant is a pretext for discrimination. The plaintiff's final burden is satisfied either by the introduction of additional evidence or by reliance on the evidence submitted in support of the *prima facie* case of discrimination. *Heyman,* 198 F.3d at 72; *see Reeves v. Sanderson Plumbing,* 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000).

### C. *Elements of an ADA Claim*

■ To state a *prima facie* case of discrimination pursuant to the ADA, a plaintiff must show: (1) that he is an individual with a disability within the meaning of the statute; (2) that his employer is subject to the ADA and had notice of the disability; (3) that he was otherwise qualified to perform the essential functions of his position, with or without reasonable accommodation; and (4) that he was fired or suffered adverse employment action because of the disability. *Heyman,* 198 F.3d at 72; *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869–70 (2d Cir.1998); *Sacay v. Research*

*Foundation of the City University of New York,* 44 F.Supp.2d 496, 500 (E.D.N.Y. 1999); *see Parker v. Columbia Pictures Indust.,* 204 F.3d 326, 332 (2d Cir.2000).

Relevant to the disposition of Plaintiff's claims of disability—actual, perceived or recorded—is the first element referred to above—whether Plaintiff's condition constitutes a "disability" within the meaning of the ADA.

### i. *Disability Within the Meaning of the ADA*

■ The ADA defines disability as: (1) a physical or mental impairment that substantially limits one or more of an individual's major life activities; (2) a record of such an impairment or (3) being perceived or regarded as having such an impairment. 42 U.S.C. § 12102(2); *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 478, 119 S.Ct. 2139, 144 L.Ed.2d 450; *Schaefer v. State Ins. Fund,* 207 F.3d 139, 142 (2d Cir.2000); *Ryan,* 135 F.3d at 869; *Zuppardo v. Suffolk County Vanderbilt Museum,* 19 F.Supp.2d 52, 54 (E.D.N.Y.1998), *aff'd,* 173 F.3d 848 (2d Cir.1999). Whether a plaintiff's claim is based upon actual, recorded or perceived disability, the disability at issue must be a disability as defined by the ADA.

■ When determining whether a plaintiff suffers from an ADA disability, courts focus first on whether Plaintiff suffers from an impairment. Second, the court determines whether the life activity identified by the Plaintiff constitutes a "major life activity" under the ADA. Finally, the court considers whether Plaintiff is "substantially limited" in the identified major life activity. *Colwell v. Suffolk County Police Department,* 158 F.3d 635, 641 (2d Cir.1998); *see Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998); *Epstein v. Kalvin–Miller Internat'l., Inc.,* 100 F.Supp.2d 222, 225–27

(S.D.N.Y.2000); *Rivera*, 148 F.Supp.2d at 212.

Physical impairments that might amount to a disability include physiological disorders or anatomical losses affecting one or more of the body's systems, including, *inter alia*, the special sense organs. *See* 29 C.F.R. § 1630.2(h)(1). The requirement that a plaintiff identify a "major" life activity affected by his impairment ensures that only significant impairments are protected under the ADA. *Colwell*, 158 F.3d at 642, quoting, *Reeves v. Johnson Controls World Services, Inc.*, 140 F.3d 144, 152 (2d Cir.1998). Major life activities include functions such as caring for oneself, performing manual tasks, seeing, hearing, speaking and breathing, 29 C.F.R. § 1630.2(j); *see Ryan*, 135 F.3d at 870. On the other hand, activities such as playing golf, shopping and performing housework are not considered to be "major life activities." *Colwell*, 158 F.3d at 643.

The "substantial limitation" inquiry is fact specific. *Colwell*, 158 F.3d at 642. Those who are substantially limited in major life activities are either unable to perform such activities or significantly restricted as to the manner or duration under which the activity may be performed. *See* 29 C.F.R. § 1630.2(j)(1). When determining whether there is a substantial limitation, the court considers: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment and (3) the permanent or long term impact resulting from the impairment. *Id.* § 1630.2(j)(2).

When evaluating the nature and severity of an impairment, the court compares the abilities of the plaintiff with those of the "average person in the general population." *Colwell*, 158 F.3d at 644, quoting, 29 C.F.R. § 1630.2(j)(1). Where an impairment is no worse than that suffered by many, no substantial limitation will be found. Thus, in *Colwell*, for example, the Second Circuit found no significant limitation on the ability to sleep where plaintiff made no showing at trial that his "affliction" was any worse than that of a large segment of the adult population. *Colwell*, 158 F.3d at 644.

The case-specific inquiry central to the substantial limitation question also requires the court to consider the impact of corrective measures on a plaintiff's condition. *Schaefer v. State Ins., Fund*, 207 F.3d 139, 142 (2d Cir.2000). This includes the use of devices such as eyeglasses, contact lenses and medications. *See Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 521, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999); *Sutton v. United Air Lines*, 527 U.S. 471, 475, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Even the body's own coping systems must be taken into account when determining the extent of any limitation. *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999). The degree of correction afforded by use of such devices may result in a finding that the impairment does not act as a substantial limitation on the major life activity claimed. *Sutton*, 527 U.S. at 483, 119 S.Ct. 2139; *e.g., Epstein v. Kalvin–Miller Internat'l., Inc.*, 100 F.Supp.2d 222, 226 (S.D.N.Y.2000) (when plaintiff's diabetes was treated he suffered no substantial limitation in any major life activity).

ii. *Record of a Disability*

Even if a Plaintiff is not actually disabled within the meaning of the ADA, he may nonetheless have a claim if he can show a record of an ADA disability. A record sufficient to establish an ADA claim, however, must document a disability within the meaning of the ADA. Thus, even if a plaintiff is not actually substantially limited in a major life activity, a

record reflecting such a limitation is sufficient to establish a disability under the ADA. A "record reflecting a plaintiff's classification as disabled for other purposes or under other standards is not enough." *Colwell,* 158 F.3d at 645. Where the record relied upon reveals no greater limitation than that experienced by an individual who is not substantially limited in a major life activity, the ADA "record of a disability" claim must fail. *Id.*

### iii. *Regarded as Having a Disability*

 Finally, an ADA plaintiff properly alleges disability where it can be shown that an employer regarded the plaintiff as having a disability. Determination of whether a plaintiff is "regarded" as having a disability turns not upon whether plaintiff actually suffers from a disability, but upon the employer's intent. *Colwell* 158 F.3d at 646. Like a record of a disability, however, a perception of a disability must, in fact, be a perception of a disability within the meaning of the ADA. *Id.* That is, the plaintiff must be perceived as being substantially limited in a major life activity.

### iv. *Elements of a Retaliation Claim*

 Both the ADA and the Rehabilitation Act prohibit retaliation against individuals asserting rights under the statutes. The standards for claims under either statute are the same. *See Weixel v. Board of Educ. of the City of New York,* 287 F.3d 138, 148 (2d Cir.2002). "To establish a prima facie case of retaliation . . . the plaintiff must show: (1) that the employee was engaged in protected activity; (2) that the employer was aware of that activity, (3) that plaintiff was subjected to an adverse employment action, and (4) that there exists a causal connection between the protected activity and the adverse employment action." *Weissman v.* *Dawn Joy Fashions, Inc.,* 214 F.3d 224, 233 (2d Cir.2000), quoting, *Sarno v. Douglas–Elliman Gibbons & Ives,* 183 F.3d 155, 159 (2d Cir.1999).

 Plaintiff satisfies the "protected activity" prong of the *prima facie* case by demonstrating a "good faith, reasonable belief" that his employer violated the law. *Muller v. Costello,* 187 F.3d 298, 311 (2d Cir.1999). The causal connection element can be established indirectly by showing a close temporal connection between the protected activity and the adverse employment action or, directly, by evidence of retaliatory animus. *Sumner v. United States Postal Service,* 899 F.2d 203, 209 (2d Cir.1990); *Brower v. Continental Airlines, Inc.,* 62 F.Supp.2d 896, 907 (E.D.N.Y.1999). Where a plaintiff fails to point to admissible evidence establishing the requisite causal connection, summary judgment in favor of the defendant is appropriate. *E.g., Sarno,* 183 F.3d at 160.

## II. The Extent of Plaintiff's Impairment: *Plaintiff's Testimony and That of His Treating Physician*

Plaintiff's allegations of disability stem from a visual impairment known as ocular albinism. Plaintiff describes his condition as causing his vision to "wash out," (fade) under certain conditions. Plaintiff uses corrective devices to aid him in activities of daily living but claims he is disabled because his vision, even when corrected, is no better than 20/60 in each eye.

### A. *Plaintiff's Deposition*

Plaintiff has had his drivers' license since 1994. He states the he is able to drive by using an adaptive aid provided by his physician. In fact, the use of this aid, along with his doctor's certification of Plaintiff's ability to see well enough to drive, allows Manz to bypass the eye test given to all drivers' license applicants.

Plaintiff testified that he cannot see signs from as great a distance as others. He stated that if this became an on-the-job issue, he would probably have to use binoculars. Although he is capable of reading, Manz states that it "may take him longer" to read a document. While commenting that he had to be closer to things than others might, Plaintiff was unaware of any other limitation and his vision did not otherwise affect his ability to read. Significantly, Plaintiff noted that his comprehension of reading material is completely unaffected by his visual limitation.

In addition to his deposition transcript, Plaintiff submitted an affidavit in response to the present motion. That affidavit details Plaintiff's limitations in engaging in the activities of hunting, watching television and reading, all of which were commented upon at his deposition. Plaintiff asserts that when hunting, he sits in a deer stand and waits for the animal to approach him. As to watching television, Plaintiff states that he can see "appropriate detail" only if he sits eight feet away from a four foot screen. Finally, Plaintiff's affidavit states that he can read only a portion of a newspaper at a time because of eye fatigue and that he needs a magnifying device in order to read small print.

## B. *Plaintiff's Treating Ophthalmologist*

Several letters from Dr. Marc Epstein, an ophthalmologist who has been treating Plaintiff since 1992, and last examined him in May of 2001, are annexed to Plaintiff's papers in opposition to the motion for summary judgment. The court focuses first on Dr. Epstein's letter dated October 17, 2001 (the "October Letter").

The October Letter indicates that Plaintiff's corrected visual acuity is 20/60 but states that with the help of "telescopic magnification," Plaintiff is able to see 20/20. His visual fields are described as "excellent." With respect to driving, Dr. Epstein states that Plaintiff has very little difficulty in driving except in environments with "extraordinarily bright lights." Dr. Epstein expressed the opinion that under these circumstances, Plaintiff can compensate for his problem by wearing sunglasses.

Dr. Epstein comments on Plaintiff's ability to read and whether his condition limits his abilities to perform the functions necessary for his job. Dr. Epstein concludes that any difficulty with reading or fine acuity tasks that arises from his condition "should not limit" Plaintiff in the performance of his professional duties.

Also before the court is a letter written by Dr. Epstein one month after the October Letter (the "December Letter"). The December Letter is an apparent attempt to mend the damage done to Plaintiff's litigation position by the October Letter. Thus, the December Letter, which Dr. Epstein states is written to "clarify" the statements made in the October Letter, states that while Plaintiff's vision can be "artificially enhanced" to 20/20, this is "not a real gain in visual acuity but an artificial improvement." The December letter describes certain limitations in Plaintiff's field of vision when using a biopic telescope, but in no way revokes the opinion that Plaintiff is able to drive.

The December Letter further describes Plaintiff's light sensitivity and states that medical filters (referred to in the October Letter as "medical filter sunglasses") must be used outdoors and Plaintiff must take breaks from reading and fine acuity tasks performed indoors.

Also executed by Dr. Epstein and attached to Plaintiff's papers is a form submitted to the New York State Department of Motor Vehicles in connection with the

renewal of Plaintiff's driver's license. That form refers to Plaintiff's corrected vision as 20/20. Plaintiff's condition is referred to as "stable." Finally, in response to the query as to whether he recommends any restrictions, Dr. Epstein passed over all boxes specifying restrictions and, instead, checked the box for "none."

## III. *Disposition of the Motion*

### A. *Claims Based Upon Actual Disability*

■ Plaintiff's direct ADA claims turn upon whether or not his condition constitutes a disability within the meaning of the ADA. In this analysis, the court notes that there is no question but that Plaintiff suffers from an ADA "physical impairment" and that such impairment has an effect on Plaintiff's ability to see, clearly an ADA "major life activity." *Accord Albertson's*, 527 U.S. at 564, 119 S.Ct. 2162 (holding that "amblyopia"—the ability to see well out of only one eye—constitutes an ADA physical impairment and that the ability to see is an ADA major life activity); *see* 29 CFR 1630.2(h)(1) (defining physical impairment to include physiological disorders or conditions affecting special sense organs); 29 CFR 1630.2(i) (seeing as an example of a "major life activity").

■ These findings however, are but the beginning of the ADA inquiry. Critical to the issue of whether Plaintiff's condition is an ADA disability is the question whether Plaintiff is, in fact, substantially limited in the major life activity of seeing. The substantial limitation issue is to be considered on a case by case basis. *Albertson's*, 527 U.S. at 566, 119 S.Ct. 2162. It is insufficient to find that many people with Plaintiff's condition are substantially limited in their ability to see. Rather, it must be determined whether the Plaintiff, in his own experience, suffers from a substantial limitation in his ability to see.

In *Albertson's*, for example, the Supreme Court noted that the visual impairment suffered by the plaintiff (monocularity) embraces a group of individuals with varying degrees of visual acuity in the weaker of their eyes. Factors to be weighed when considering whether each such person suffers from an ADA disability include, *inter alia*, the extent of compensating adjustments in visual technique. This fact-specific inquiry prohibits a court from finding that all people with a particular disorder necessarily suffer from an ADA disability. *Albertson's*, 527 U.S. at 566, 119 S.Ct. 2162; *see e.g., Epstein*, 100 F. Supp2d at 226 (not all individuals with diabetes are disabled under the ADA).

■ Application of legal standards defining substantial limitation to Plaintiff's case makes it clear that Plaintiff is not substantially limited in his ability to see (or read) and therefore does not suffer from an ADA disability. As Plaintiff's own testimony and treating physician's reports reveal, Plaintiff uses several ameliorative devices to allow him to function. These glasses and other visual aids allow Plaintiff to drive a car, read and perform the duties of his occupation. Indeed, Dr. Epstein notes, in more than one document, that Plaintiff's vision is correctable to 20/20.

While Dr. Epstein attempts to make a distinction based upon whether this is a real or "artificial" 20/20, the distinction is without meaning. Every near-sighted person who wears eyeglasses has their vision "artificially" corrected to 20/20 while they remain myopic. Every person whose high blood pressure is "corrected" by the use of medication still suffers from hypertension. Similarly, Plaintiff has his vision artificially improved to 20/20 while still suffering from ocular albinism. Any distinction between a "real" and "artificial" correction is simply semantic.

In light of the foregoing, the court holds that Plaintiff does not suffer from a disability within the meaning of the ADA and therefore dismisses the claim that he was discriminated against on the basis of a disability. Because an ADA disability is defined in the same way as an disability under the Rehabilitation Act, the court similarly dismisses a claim of discrimination based upon that statute. *See Weixel v. Board of Educ. of the City of New York City,* 287 F.3d 138, 146 (2d Cir.2002).

### B. Claim Based Upon a Record of or a Perceived Disability

■ Plaintiff's record of and perceived disability claims are similar to his actual disability claim in that these claims focus upon whether Plaintiff's employment record and the intent of his employer shows a recorded or perceived disability within the meaning of the ADA. Plaintiff bases his recorded and perceived disability claims largely on the fact that he was hired pursuant to Section 55-a—the statute that allows the County to hire certain "disabled" individuals. That Plaintiff was hired under a statute referring to hiring of disabled individuals, standing alone, is insufficient to establish a perceived or recorded disability claim under the ADA.

As held by the Second Circuit in *Colwell,* "a record reflecting a plaintiff's classification as disabled for other purposes or under other standards is not enough" to establish a record of an ADA record of a disability. *Colwell,* 158 F.3d at 645. For example, an Administrative Law Judge's finding in a worker's compensation hearing that a plaintiff suffers from a permanent partial disability is insufficient to establish a record of a disability for purposes of the ADA. *Vaughnes v. United Parcel Service, Inc.,* 2000 WL 1145400 *7 (S.D.N.Y. August 14, 2000). Similarly here, the court rejects the notion that the hiring of Plaintiff pursuant to Section 55-a, and the reflections thereto in Plaintiff's employment file, constitute a record of a disability for the purpose of the ADA.

■ The numerous references in Plaintiff's employment files using the words "disabled" or "accommodation" are similarly unavailing. These references merely document the precise visual condition described above—they do not document a disability that substantially limits a major life activity and are therefore insufficient to create an issue of fact as to Plaintiff's perceived and recorded disability claims are concerned. Accordingly, the court dismisses the claims of perceived and recorded disability under the ADA and the Rehabilitation Act.

### C. Retaliation Claim

Plaintiff's complaint states that Defendants refused to promote him to the position of Caseworker Trainee in June of 1998, August of 1998, October of 1998 and March of 1999. To the extent that the failure to promote Plaintiff is stated as a direct ADA claim, it must be denied because Plaintiff is not a member of a class of individuals protected by the ADA. *See Brown v. Coach Stores, Inc.,* 163 F.3d 706, 709 (2d Cir.1998) ("failure to promote" cause of action requires plaintiff to show that he is a member of a protected class); *Brower v. Continental Airlines, Inc.,* 62 F.Supp.2d 896, 905 (E.D.N.Y.1999) (where plaintiff failed to show that she was disabled, claim of failure to promote necessarily dismissed); *Giruzzi v. Blue Cross/Blue Shield of Utica–Watertown, Inc.,* 1998 WL 690981 *6 (N.D.N.Y. September 30, 1998) (same).

Plaintiff's memorandum of law in opposition to the present motion attempts to amplify the retaliation claim as more than a direct failure to promote claim by basing his claim of retaliation upon two events.

First, Plaintiff alleges that he engaged in the protected activity of filing a Notice of Claim of Discrimination with the County in May of 1998. One month after engaging in that activity, Plaintiff received a poor performance evaluation. Second, Plaintiff alleges engaging in the protected activity of filing charges with the EEOC in September of 1998 and April of 1999. He alleges that he thereafter received unfavorable "selective discipline." According to Plaintiff, the timing of these events establishes the causal connection necessary to support a retaliation claim.

Defendants argue that Plaintiff's retaliation claim must be dismissed because: (1) he did not suffer adverse employment action and, (2) he cannot establish the required causal connection between any protected activity and adverse employment action.

It is anything but clear that adverse performance reviews, standing alone, can support a claim for retaliation. *See Simmons v. New York City Health and Hosp. Corp.*, 2001 WL 483675 *5–6 (E.D.N.Y. March 30, 2001). The court assumes, however, for purposes of this motion, that adverse performance reviews and selective discipline, when coupled with a claim of failure to promote, are sufficient to overcome summary judgment on the issue of adverse employment action.

 Despite the court's acceptance that Plaintiff has properly alleged adverse employment action, the County is nonetheless entitled to summary judgment on the retaliation claim. A review of the record reveals that employment decisions concerning Plaintiff's placement were made prior to Plaintiff's taking any action protected by the ADA. Plaintiff was twice denied the promotion to the Caseworker Trainee position—once in November of 1997 and once in March of 1998. Both of these rejections took place months before

Plaintiff ever filed a Notice of Claim of Discrimination with the County.

It matters not that Plaintiff is of the opinion that he was passed over for the promotion in favor of a less qualified applicant. The issue is not whether Defendants made the right choice for the position, the issue is whether there is any evidence of discrimination in the decision to pass over Plaintiff. There is none.

As to adverse performance reviews, a review of Plaintiff's employment record reveals that performance reviews issued after the filing of his notice of claim are consistent with those filed before Plaintiff engaged in this protected activity and therefore, cannot support a claim of retaliation. Indeed, records reveal negative comments in Plaintiff's performance evaluations in July of 1995 and in March of 1996, years before the making of any claim of discrimination.

For the foregoing reasons, the court holds that Plaintiff has failed to allege facts sufficient to support a claim that there is any causal connection between Plaintiff engaging in protected activity and any act of Defendants. Accordingly, the court grants Defendant' motion for summary judgment as to Plaintiff's claims of retaliation.

### D. *State Law Claims*

In light of the dismissal of all of Plaintiff's federal claims, it would be inappropriate to exercise supplemental jurisdiction over the claims asserted pursuant to New York State Law. *Giordano v. City of New York*, 274 F.3d 740, 754–55 (2d Cir.2001) (error for district court to exercise supplemental jurisdiction over plaintiff's state law claims where federal disability claims were dismissed). Accordingly, the court dismisses Plaintiff's claims pursuant to

New York State Law without prejudice to pursuing those claims in State Court.

## CONCLUSION

For the foregoing reasons, Defendants motion for summary judgment is granted. The Clerk of the Court is directed to terminate the motion for summary judgment and to close the file in this matter.

SO ORDERED